**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-1425-WJM
Criminal Case No. 14-cr-262-WJM-1

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,

v.

**MICHAEL CHU,**

      Defendant-Petitioner.

---

## ORDER GRANTING 28 U.S.C. § 2255 MOTION

---

Before the Court is Defendant Michael Chu's Motion to Vacate Under 28

U.S.C. § 2255.  (ECF No. 35.)[1]  For the reasons explained below, the petition is

granted, Chu's criminal judgment is vacated, and this matter will be set for re-

sentencing.

## I.  BACKGROUND

On October 10, 2014, pursuant to a plea agreement (ECF No. 21), Defendant

Chu entered a plea of guilty to one count of violating 18 U.S.C. § 922(g)(1) for illegal

possession of ammunition by a prohibited person, namely, a previously convicted felon.

(ECF No. 21.)

The Probation Office then prepared a Presentence Investigation Report (PSIR)

which calculated Chu's sentencing range under the United States Sentencing

---

[1] The caption of Defendant's motion erroneously states that it is based on "18 U.S.C.
§ 2255."

Guidelines ("Guidelines").  (ECF No. 25.)  That calculation began with Guidelines

§ 2K2.1, which specifies a base level of 24 because Mr. Chu had "at least two felony

convictions of either a crime of violence or a controlled substance offense."  U.S.S.G.

§ 2K2.1(a)(2).[2]  Specifically, the Probation Office found that Mr. Chu had "prior

convictions for robbery (1999) and second degree assault (2004).  Therefore, the base

offense level is 24."  (ECF No. 25 ¶ 17.)  After reductions for acceptance of

responsibility, the PSIR calculated a total offense level of 21.  (*Id.* ¶ 26.)  The PSIR also

concluded that Mr. Chu had a total criminal history score of 9 points, falling within

criminal history category IV.  (*Id.* ¶ 39.)  His Guidelines advisory sentencing range as

calculated in the PSIR was therefore 57–71 months.  (ECF No. 25 at 21.)  Neither party

made objections to the PSIR.  (ECF No. 32.)

　　In addition, the Government filed a motion for a one-level reduction in the

offense level, in exchange for Chu's agreement to an appeal waiver in his plea

agreement.  (ECF No. 30; ECF No. 36 at 4–5.)  At sentencing on February 25, 2015,

the Court granted this motion, yielding a total offense level of 20.  (ECF No. 33; ECF

No. 36 at 5–6.)  Given this reduction, the advisory Guidelines sentencing range became

51 to 63 months.  (ECF No. 36 at 5–6.)

　　The Court also granted in part Chu's motion for a downward variance (ECF No.

27), ultimately imposing a below-Guidelines sentence of 36 months of imprisonment,

followed by three years of supervised release.  (ECF No. 33; ECF No. 34; ECF No. 36

at 26–28.)

---

[2] Unless otherwise noted, all Guidelines citations in this order are to the 2014 edition of the Guidelines, which was in effect at the time Chu was sentenced.  (*See* ECF No. 31 ¶ 16.)

The Court recommended that Chu receive full credit for 218 days served in pretrial detention (ECF No. 36 at 18, 30), and the Bureau of Prisons now calculates his release date as March 2, 2017.

## II.  LEGAL AND PROCEDURAL BACKGROUND

### A.    *Johnson* and *Welch*

On June 26, 2015, the Supreme Court decided *Johnson v. United States*, 135 S. Ct. 2551 (2015).[3]  *Johnson* examined the Armed Career Criminal Act ("ACCA"), which mandates a 15-year minimum sentence for anyone convicted of felon-in-possession who "has three previous convictions . . . for a violent felony."  18 U.S.C.  § 924(e)(1). Specifically at issue in *Johnson* was the ACCA's definition of "violent felony":

> any crime punishable by imprisonment for a term exceeding one year . . . if committed by an adult, that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another* [.]

*Id.* § 924(e)(2)(B) (emphasis added).  The italicized phrase in clause (ii) is commonly known as the "residual clause," while clause (i) is known as the "elements clause".[4]

*Johnson* analyzed the residual clause, specifically whether the defendant, Samuel Johnson, qualified for the mandatory 15-year minimum sentence because his

---

[3] References in this opinion to *Johnson*, without more, are to this *Johnson* decision. However, the Court will also at times refer to this decision as *Samuel Johnson*, to distinguish it from the *Curtis Johnson* decision, also relevant herein.

[4] Elsewhere, including in the Government's briefing, the elements clause is also referred to the "force clause."

prior conviction for unlawful possession of a short-barreled shotgun fell within the residual clause. *Johnson*, 135 S. Ct. at 2556.  The Supreme Court held, however, that the residual clause was unconstitutional: "We are convinced that the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges.  Increasing a defendant's sentence under the clause denies due process of law."  *Id.* at 2557.

On April 18, 2016, the Supreme Court decided *Welch v. United States*, 136 S.Ct. 1257 (2016).  *Welch* held that *Johnson* announced a "substantive" change in the criminal law and therefore applies retroactively, at a minimum to those prisoners who received ACCA mandatory minimum sentences on account of offenses deemed "violent felonies" due to the residual clause.  *Id.* at 1265.  Thus, via 28 U.S.C. § 2255, those prisoners can collaterally challenge their sentences as unconstitutional.

## B.    Chu's Petition

Chu was *not* sentenced under the ACCA.  However, his base offense level was calculated with reference to Guidelines language that is nearly identical to the ACCA's definition of "violent felony."  Specifically, and as relevant here, Guidelines § 2K1.1(a)(2) establishes a base offense level of 24 for an offender who has previously received "at least two felony convictions of . . . a crime of violence," with "crime of violence," being defined by cross-reference to § 4B1.2(a).  *See* U.S.S.G. § 2K2.1, Application Note 1.

The Guidelines thus apply the following definition of "crime of violence":[5]

> any offense under federal or state law, punishable by

---

[5] This section has since been amended, but Guidelines ranges are calculated according to the Guidelines in effect at the time the defendant is sentenced.  *See* U.S.S.G. § 1B1.11.

imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).  Save for the addition of "of a dwelling" after "burglary," paragraphs (1) and (2) are verbatim copies of the corresponding paragraphs in the ACCA's "violent felony" definition that was addressed in *Johnson*, including both the elements clause and residual clause.

As noted above, the PSIR found that Chu had two prior convictions that qualified as "crimes of violence," specifically for robbery and for second degree assault, both in Colorado.  Chu argues that his second degree assault conviction can only be classified as a crime of violence under the residual clause of the § 4B1.2(a)(2), that under *Johnson* this provision is unconstitutional, and that his base offense level therefore should never have been as high as 24.  "Holding all other [sentencing] variables constant," Chu argues, he "would have been sentenced to approximately 21 months absent application of § 2K2.1(a)(2) for the prior second degree assault conviction." (ECF No. 35 at 2.)  If Chu is correct, his prison sentence might already have concluded, since the Guidelines calculation based on his prior conviction may have added approximately 15 months to his prison term, which is now within six months of concluding.

### III. ANALYSIS

**A.    Is Second Degree Assault in Colorado a "Crime of Violence" for Purposes of U.S.S.G. § 4B1.2(a)(1)?**

The Court first addresses whether Chu's prior conviction for second degree assault in Colorado qualifies as a "Crime of Violence" under § 4B1.2(a) without the residual clause. If this conviction is properly considered a "crime of violence" under the elements clause (§ 4B1.2(a)(1)), then Chu was properly sentenced even without the residual clause and is not entitled to the relief he seeks pursuant to *Johnson*.

1.    The Categorical Approach

The Tenth Circuit prescribes the "categorical approach" to determine whether an offense is a "crime of violence" for purposes of § 4B1.2(a). *See United States v. Wise*, 597 F.3d 1141, 1144 (10th Cir. 2010). Under this approach, the sentencing court "looks to the words of the statute and judicial decisions interpreting it, rather than to the conduct of any particular defendant convicted of the crime." *Id.* In other words, a court must look to "the least of the[] acts" that could be prosecuted under the relevant statute. *Curtis Johnson v. United States*, 559 U.S. 133, 137 (2010) ("*Curtis Johnson*"). The court then inquires whether that minimum conduct meets the Guidelines definition of a crime of violence.

At the time Chu was sentenced, § 4B1.2(a)'s "crime of violence" definition would have read as follows, without the residual clause:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

6

(2) is burglary of a dwelling, arson, or extortion, or involves
use of explosives[.]

No party disputes that Chu's 2004 Second Degree Assault conviction was

"punishable by imprisonment for a term exceeding one year," and the Government does

not claim Chu's second degree assault conviction can be considered "burglary of a

dwelling, arson, or extortion, or involves use of explosives."  Therefore, whether Chu's

second degree assault conviction qualifies as a crime of violence depends on the

elements clause, in other words, whether the statute under which he was convicted

"has as an element the use, attempted use, or threatened use of physical force against

the person of another."  U.S.S.G. § 4B1.2(a)(1).

2.    Second Degree Assault in Colorado (Colo. Rev. Stat. § 18-3-203)

Chu's second degree assault conviction was for a "heat of passion" commission

of second degree assault, criminalized under Colorado Revised Statutes

§ 18-3-203(1)(g) & (2)(a):

> (1) A person commits the crime of assault in the second
> degree if:
>
>         * * *
>
> (g) With intent to cause bodily injury to another person, he or
> she causes serious bodily injury to that person or another[.]
>
>         * * *
>
> (2)(a) If assault in the second degree is committed under
> circumstances where the act causing the injury is performed
> upon a sudden heat of passion, caused by a serious and
> highly provoking act of the intended victim, affecting the
> person causing the injury sufficiently to excite an irresistible
> passion in a reasonable person, and without an interval
> between the provocation and the injury sufficient for the
> voice of reason and humanity to be heard, it is a class 6

7

felony.

Colo. Rev. Stat. § 18-3-203.[6]

The Government argues that this provision qualifies as a crime of violence under the elements clause of § 4B1.2(a) because the statute "implicitly but necessarily requires proof of force sufficient to cause bodily injury." (ECF No. 48 at 16 (citing *Curtis Johnson*, 559 U.S. at 140).) Neither party cites any prior cases deciding whether a conviction under these specific provisions constitutes a "crime of violence" under the ACCA or § 4B1.2(a) and the Court has not found a case directly on point.[7] However, the Tenth Circuit's prior analysis of closely-related Colorado assault provisions provides guidance.

In *United States v. Perez-Vargas*, 414 F.3d 1282, 1285–87 (10th Cir. 2005), the Tenth Circuit analyzed whether a conviction under Colorado's third degree assault

---

[6] The Government's opposition attaches docket materials from Chu's state court case reflecting that Chu pled guilty to a single count under these specific subsections of § 18-3-203. (ECF No. 48-1 at 7–8.) Chu does not dispute that these materials accurately reflect his prior conviction. Accordingly, Chu's arguments relating to other sub-sections of § 18-3-203 are not relevant, including his argument that § 18-3-203(d) allows conviction based on a reckless state of mind and therefore cannot be a crime of violence. (*See* ECF No. 35 at 5.)

[7] Prior to *Johnson*, and relying on cases overturned by *Johnson*, the Tenth Circuit held in *United States v. Sandoval*, 696 F.3d 1011, 1015 (10th Cir. 2012), that conviction under the same provisions at issue here constituted a violent felony under the residual clause of the ACCA. The relevant question here is whether conviction under these provisions still constitutes a crime of violence *without* the residual clause.

In a previous unpublished case, *United States v. Greer*, 85 F. App'x 181, 183 (10th Cir. 2004), the Tenth Circuit concluded without analysis that a second degree assault conviction under Colorado Revised Statutes § 18-3-203(1)(g) was a "crime of violence" under § 4B1.2(a)(1), but without specifying whether the decision rested on the elements clause or the residual clause. Given that ambiguity, because *Greer* is not precedential, and because it predates the published decisions both in *Sandoval and* in the *Perez-Vargas* case discussed herein, the Court need not further consider it.

8

statute, Colorado Revised Statutes § 18-3-204, constituted a crime of violence under the Guidelines.[8]  In addition to being codified in adjacent sections, §§ 18-3-203 and -204 use similar language and structure to define assault offenses.  As analyzed in *Perez-Vargas*, § 18-3-204 imposes criminal liability based on whether a defendant "causes bodily injury" to another person.  414 F.3d at 1285.  Likewise, the provision at issue here, § 18-3-203(1)(g), defines second degree assault predicated on "caus[ing] serious bodily injury" to another person, and the "heat of passion" provision, § 18-3-203(2)(A), similarly describes an "act causing the injury."

In *Perez-Vargas*, the court took up the defendant's argument that while "the Guidelines focus on the *means* by which an injury occurs (the use of physical force)," the assault statute "focuses on the *result* of a defendant's conduct, *i.e.*, bodily injury." *Id.* at 1285 (emphasis in original).  Following this logic, the court recognized that it is possible to be convicted under § 18-3-204 for causing bodily injury, but without use or threat of physical force against another person.  *See id.* at 1286 (noting hypotheticals, including "intentionally placing a barrier in front of a car causing an accident").  *Perez-Vargas* therefore held that a conviction for "caus[ing] bodily injury" under § 18-3-204 "does not necessarily include the use or threatened use of 'physical force' as required by the Guidelines.  A prior conviction for third degree assault in Colorado, therefore, is

---

[8] In both *Perez-Vargas*, and *Rodriguez-Enriquez* (discussed below), the court addressed a separate Guidelines provision defining "crime of violence," as applicable to convictions for unlawful re-entry.  However, the relevant language (the elements clause) was identical to the language at issue here, defining a crime of violence to include any "offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another."  *See Perez-Vargas*, 414 F.3d at 1285 (quoting U.S.S.G. § 2L1.2, Application Note 1(B)(iii)).

not categorically a crime of violence." *Id.* at 1287.

Three years later, in *United States v. Rodriguez-Enriquez*, 518 F.3d 1191, 1192–93 (10th Cir. 2008), the Tenth Circuit applied the reasoning of *Perez-Vargas* to analyze whether second degree assault by way of drugging a victim, Colo. Rev. Stat. § 18-3-203(1)(e), was a "crime of violence" under the Guidelines. *Id.* at 1192.[9] The court followed *Perez-Vargas*, reaffirming that "we look to 'the means by which the injury occurs (the use of physical force),' not 'the result of defendant's conduct, *i.e.*, bodily injury,'" and emphasized that the analysis should "focu[s] on the means employed." *Id.* at 1195 (citing *Perez-Vargas*, 414 F.3d at 1286). Since § 18-3-203(1)(e) "criminalizes harm caused," rather than the means of causing that harm, the court held that convictions under § 18-3-203(1)(e) are not necessarily crimes of violence. *Id.*

Finally, this year in *United States v. Porter*, 643 F. App'x 758, 761 (10th Cir. 2016), the Tenth Circuit continued to apply this law, in the context of a challenge pursuant to *Johnson*, and in a case with facts similar to this case. As here, in *Porter*, the defendant was sentenced for violation of 18 U.S.C. § 922(g) and the Guidelines range was increased pursuant to §§ 2K2.1(a)(2) & 4B1.2(a)(2), based a prior conviction for second degree assault, there under the same involuntary drugging provision addressed by *Rodriguez-Enriquez*. On direct appeal, the Government agreed that it had been plain error to treat that conviction as a crime of violence under § 4B1.2(a)(2), and the Tenth Circuit therefore concluded that the sentence imposed had been contrary

---

[9] Specifically, section 18-3-203(1)(e) defines a second degree assault if a defendant "intentionally causes stupor, unconsciousness, or other physical or mental impairment or injury to another person by administering to him, without his consent, a drug . . . capable of producing the intended harm."

to *Johnson* and ordered the district court to "resentence [defendant] without treating [his] prior second-degree assault convication as a crime of violence for purposes of U.S.S.G. § 2K2.1(a)."

In light of these cases and applying the categorical approach, the Court concludes that Chu's conviction under § 18-3-203(1)(g) & (2)(a) is not a crime of violence under the elements clause of § 4B1.2(a)(1), and could only be considered a "crime of violence" by applying the residual clause of § 4B1.2(a)(2).  The statutory provision(s) at issue here share the same structure and phrasing as those the Tenth Circuit has concluded are not crimes of violence under the elements clause.  As was true in *Perez-Vargas*, § 18-3-203(1)(g) prohibits the *result* of an assault—whether the defendant "causes serious bodily injury," while the "crime of violence" analysis under the elements clause of § 4B1.2(a) depends on the *means* by which the offense was committed  *See Perez-Vargas*, 414 F.3d at 1285; *Rodriguez-Enriquez*, 518 F.3d at 1195; *see also, e.g., United States v. Torres-Miguel*, 701 F.3d 165, 169 (4th Cir. 2012) (agreeing with *Perez-Vargas* and other decisions that have "recognized that, to constitute a predicate crime of violence justifying a sentencing enhancement under the Guidelines, a state offense must constitute a *use* or *threatened use* of violent force, not simply *result* in physical injury or death" (emphasis in original)).  As in *Perez-Vargas*, because a defendant could be convicted for a "heat of passion" second degree assault under §§ 18-3-203(1)(g) & (2)(a) without using "physical force against the person of another," Chu's conviction under this statute is not a crime of violence under § 4B1.2(a)(1).

11

The Government does not address the cases or analysis set out above, but relies on the Supreme Court's decision in *Curtis Johnson*, arguing that a conviction for causing serious bodily injury under § 18-3-203(1)(g) & (2)(a) necessarily involves "force capable of causing physical pain or injury to another person" within the meaning of *Curtis Johnson*.  (ECF No. 48 at 16.)

*Curtis Johnson*, like *Samuel Johnson*, construed the ACCA's definition of "violent felony."  *Curtis Johnson*, 559 U.S. at 135 (construing 18 U.S.C. § 924(e)(2)(B)).  At issue was whether a prior conviction for simple battery under Florida law satisfied the "physical force" requirement of the elements clause of that definition.  *Id.* at 136.  Reviewing the Florida statute, the Court concluded that Curtis Johnson's "conviction was a predicate conviction for a 'violent felony' . . . only if 'actually and intentionally touching' another person constitutes the use of 'physical force.'"  *Id.* at [1269].  And, the Florida Supreme Court had held that this element of the crime was "satisfied by *any* intentional physical contact, no matter how slight."  *Id.* at 138 (emphasis in original).  The U.S. Supreme Court concluded that the ordinary meaning of the phrase "physical force," in the ACCA "suggest[s] a degree of power that would not be satisfied by the merest touching," and therefore held that in defining a violent felony under the ACCA, "the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person."  *Id.* at 139, 140 (emphasis in original).  Therefore a Florida simple battery statute conviction, potentially predicated on mere touching, did not constitute a crime of violence including "as an element the use, attempted use, or threatened use of physical force."

Thus, while *Curtis Johnson* post-dates both *Perez-Vargas* and *Rodriguez-Enriquez*, it addressed an issue not in dispute here, namely, what degree of force is sufficient to constitute "physical force."[10]  Here, the analysis depends not on the degree of force but on whether the state statute requires the use of physical force against the victim at all, or can be satisfied based on the resulting injury, even if accomplished by means other than the use or threat of "physical force against the person of another." § 4B1.2(a)(1). The Government's reliance on *Curtis Johnson* therefore does not alter the analysis and result here.

## B.    May Chu Bring This § 2255 Collateral Challenge Under *Johnson*?

The Government argues that because Chu was sentenced under the Guidelines, rather than the ACCA, *Johnson* does not offer him relief.  Specifically, the Government argues that although *Johnson* announced a new substantive rule as to mandatory minimums under the ACCA, it at most announced a procedural change as to the Guidelines and is therefore not applicable retroactively under *Teague v. Lane*, 489 U.S. 288 (1989).  (*See* ECF No. 48 at 6–12.)

Chu's § 2255 motion was filed more than a year after the date his conviction became final, but within a year of the *Johnson* decision.  His ability to bring a § 2255

---

[10] The analysis in *Curtis Johnson* is contrary to certain aspects of the statutory discussion in *Rodriguez-Enriquez*.  *Compare Rodriguez-Enriquez*, 518 F.3d at 1194 (considering different possible meaning of the adjective *"physical"* in the phrase "physical force") *with Curtis Johnson*, 559 U.S. at 138–39 (concluding meaning of "physical" "plainly refers to force exerted by and through concrete bodies—distinguishing physical force from, for example, intellectual force or emotional force).  But, as explained herein, those issues do not alter the analysis relevant here.  Moreover, since *Curtis Johnson* was decided, the Tenth Circuit has continued to cite to both *Perez-Vargas* and *Rodriguez-Enriquez*, giving no reason to suggest their holdings are no longer good law as a general matter.  *See, e.g., United States v. Hanns*, 464 F.App'x 769, 770 (10th Cir. 2012).

motion therefore depends on whether his motion raises a right to relief that was "initially recognized by the Supreme Court" in *Johnson* and is a "newly recognized" right, "made retroactively applicable to cases on collateral review."  28 U.S.C. § 2255(f)(3); *see also* 28 U.S.C. § 2255(f)(1) (motions not raising a newly recognized right must be brought within one year after the conviction became final).

In *Welch*, the Supreme Court explicitly held that *Johnson* announced a new substantive rule that is retroactive on collateral review. (*See* Part I.B, *above*.)  The question, then, is the scope of the substantive rule announced *Johnson*.  If *Johnson* extends no further than the ACCA, then it offers no "newly recognized" right with respect to § 4B1.2(a), and therefore no justification for Chu to bring an otherwise untimely § 2255 motion.  If, on the other hand, the right recognized in *Johnson* also applies under the Guidelines, then Chu's petition was timely and cognizable.

 As the Court understands it, Chu claims that the due process violation recognized in *Johnson* is an inherent flaw with *the language* used in the residual clause, not in the residual clause as found in the ACCA specifically.  Chu argues that "*Johnson* is retroactive for all purposes" and that *Welch*'s recognition of a retroactively applicable right "was not limited to ACCA cases."  (ECF No. 49 at 5, 7.)  Thus, from Chu's perspective, *Johnson* established that *that language* of the residual clause is unconstitutionally vague—a rule that necessarily extends to any other instance of that same language, including the language of § 4B1.2(a)(2).  The Government takes essentially the opposite position, *i.e.*, that the right recognized in *Johnson* and *Welch* is limited to convictions under the ACCA's residual clause, and that the Supreme Court

has not  announced a substantive (and therefore retroactive) rule as to § 4B1.2(a).

The Court agrees with Chu's view of the application of *Johnson* and *Welch*.  The

analysis in *Johnson* focuses on a basic problem inherent in the language that the

ACCA and the Guidelines share:

> Deciding whether the residual clause covers a crime . . .
> requires a court to picture the kind of conduct that the crime
> involves in "the ordinary case," and to judge whether that
> abstraction presents a serious potential risk of physical
> injury.  The court's task goes beyond deciding whether
> creation of risk is an element of the crime.  That is so
> because, unlike the part of the definition of a violent felony
> that asks whether the crime "has *as an element* the use . . .
> of physical force," the residual clause asks whether the
> crime "*involves conduct*" that presents too much risk of
> physical injury.

135 S. Ct. at 2557 (emphasis in original; second ellipsis in original; citation omitted).

This approach "leaves grave uncertainty about how to estimate the risk posed by a

crime."  *Id.*  It also "leaves uncertainty about how much risk it takes for a crime to qualify

as a violent felony.  It is one thing to apply an imprecise 'serious potential risk' standard

to real-world facts; it is quite another to apply it to a judge-imagined abstraction."  *Id.* at

2558.  Thus, "[i]ncreasing a defendant's sentence under the [residual] clause denies

due process of law."  *Id.* at 2557.

These problems are inherent in the language used, not only in the language as it

appears in the ACCA.  Likewise, the problems arising from the interaction of the

categorical approach with the residual clause also arise under the Guidelines, and are

not unique to the ACCA.  *See Wise*, 597 F.3d at 1144 (courts use categorical approach

in applying § 4B1.2(a)); *Welch*, 136 S. Ct. at 1262 ("The vagueness of the residual

clause rests in large part on its operation under the categorical approach."). Thus, the Court concludes that *Johnson* announced a substantive rule with respect to the language used in the residual clause, not limited only to the instance of that language in the ACCA. Given that, the Supreme Court's holding in *Welch* that *Johnson* applies retroactively satisfies § 2255(f)(3) with respect to any claim based on the same language at issue in *Johnson*. *See also United States v. Hawkins*, 2016 WL 3645154, at *5 (D. Neb. June 30, 2016) (finding *Johnson* to be substantively retroactive with respect to the Guidelines as much as the ACCA). Accordingly, the Court concludes that Chu's § 2255 claim is properly raised and not untimely.

The Court's analysis of this issue is also informed and supported by recent holdings of the Tenth Circuit. First, after *Johnson* but before *Welch*, the Tenth Circuit held in *United States v. Madrid*, 805 F.3d 1204, 1210 (10th Cir. 2015), that § 4B1.2(a)'s residual clause was unconstitutional in light of *Johnson*. Given § 2255's dictate that the Supreme Court controls whether constitutional rulings may be applied retroactively to sentences already imposed, *Madrid* is relevant to cases that were on direct appeal at the time it is decided, but is not strictly relevant to the question of whether Chu's sentence should be vacated pursuant to his § 2255 motion for collateral review. Nevertheless, *Madrid* demonstrates that the concerns of vagueness and arbitrary application recognized by *Johnson* arise equally with respect to sentences imposed under the Guidelines. "*Johnson* is unambiguous. The vagueness doctrine exists not only to provide notice to individuals, but also to prevent judges from imposing arbitrary or systematically inconsistent sentences. . . . If one iteration of the [residual] clause is

unconstitutionally vague, so too is the other." *Madrid*, 805 F.3d at 1210.

Second, this month in *Golicov v. Lynch*, ___ F.3d ___, 2016 WL 4988012 (10th

Cir. Sept. 19, 2016), the Tenth Circuit held that the separate definition of "crime of

violence" applicable in deportation proceedings under the Immigration and Nationality

Act ("INA") is unconstitutional under *Johnson*.  *Id.* at *1–2.  The definition at issue was

similar to, but distinct from the residual clause language found in the ACCA and

§ 4B1.2(a)(1).  *See id.* (citing 18 U.S.C. § 16(b)).  Nevertheless, *Golicov*, concluded that

this similar definition of "crime of violence" was unconstitutionally vague under *Johnson*.

*Id.* at 2.  In so holding, the court relied on the following language from *Welch*, which

suggests that it is the language of the residual clause which is unconstitutional under

*Johnson*, not only its particular incidence and operation within the ACCA:

> The *Johnson* Court held the residual clause unconstitutional
> under the void-for-vagueness doctrine . . . . [which] prohibits
> the government from imposing sanctions "under a criminal
> law so vague that it fails to give ordinary people fair notice of
> the conduct it punishes, or so standardless that it invites
> arbitrary enforcement."  *Johnson* determined that the
> residual clause could not be reconciled with that prohibition.
>
> * * *
>
> In the *Johnson* Court's view, the "indeterminacy of the
> wide-ranging inquiry" [under the categorical approach] made
> the residual clause more unpredictable and arbitrary in its
> application than the Constitution allows.

*Golicov*, 2016 WL 4988012, at *4–5 (quoting *Welch*, 136 S.Ct. at 1261–62).  In light of

this analysis, *Golicov* concluded that the terms of § 16(b) were "not meaningfully

distinguishable from the ACCA's residual clause."  *Id.* at *5.  Thus, although *Golicov* did

not address the issues presented here, it demonstrates that the holding of *Johnson* is

not limited to the ACCA, and that *Johnson's* application cannot be so narrowly confined as the Government suggests.

In addition, *Golicov* recognized the "insidious comingling of INA, ACCA and Sentencing Guidelines precedents." *Id.* at * 8 (citation omitted, alterations incorporated).  This co-mingling further corroborates this Court's view that the right to collateral relief recognized by *Johnson* and *Welch* applies equally both to defendants whose sentences were increased under the ACCA's residual clause and to those whose sentences were increased by operation of identical language in the Guidelines.

Third, in *In re Encinias*, 821 F.3d 1224 (10th Cir. 2016), the petitioner sought relief under § 2255, arguing that his enhanced sentencing range calculated under the Guidelines' career-offender provision, U.S.S.G. § 4B1.1, had been contrary to *Johnson* and that he was therefore entitled to retroactive collateral relief.  *Encinias*, 821 F.3d at 1224–25.  The Tenth Circuit concluded that the petitioner was allowed to raise this challenge in a second or successive petition pursuant to 28 U.S.C. § 2255(h)(2). Similar to the extension of the 1-year statute of limitations for a motion resting on a newly recognized right, § 2255(h)(2) allows a second or successive motion if the court of appeals certifies that it rests on "a new rule of constitutional law, made retroactive to cases on collateral review."

In *Encinias*, the Tenth Circuit held that petitioner made a *prima facie* showing that *Johnson* does recognize such a "new rule" applicable retroactively to the Guidelines.  *See* 821 F.3d at 1224–25.  While this certification pursuant to 28 U.S.C. § 2244(b)(3)(C) is not a definitive disposition of the issue, it did recognize that "it

appears reasonably likely that the that the application satisfie[d] the stringent requirements of the filing of a second or successive petition." *Id.* at 1225.  In other words the Tenth Circuit's *per curiam* view was that it is "reasonably likely" that *Johnson* applies retroactively to the Guidelines.  The court also noted that while "one might object that Encinias is relying on *Madrid* rather than *Johnson* . . . given the similarity of the clauses addressed in the two cases and the commonality of the constitutional concerns involved, we consider it appropriate to conclude, as a prima facie matter, that [his] challenge . . . is sufficiently based on *Johnson*" to permit a second or successive § 2255 motion.  *Id.* at 1226.

In short, the Tenth Circuit's recent decisions support the Court's conclusion that the rule of *Johnson* is not limited to the ACCA but held that application of the *language* of the residual clause is unconstitutional.  Given this conclusion, the Court need not take up the Government's invitation to decide whether the rule prohibiting application of the residual clause as found in § 4B1.2(a)(2) is procedural or substantive (*see* ECF No. 9–12), because the Supreme Court has already decided, without qualification, that "the rule announced in *Johnson* is substantive."  *Welch* 136 S.Ct. at 1265.  Having concluded that *Welch*'s holding making *Johnson* retroactively applicable also extends to sentences imposed under § 4B1.2(a)(2), Chu is entitled to seek relief pursuant to *Johnson* via a § 2255 motion.

## C.   Would Chu Have Received a Different Sentence?

Given that the Sentencing Guidelines are advisory, the question arises whether the undersigned, if presented with a Guidelines sentencing range consistent with

*Johnson* would nevertheless have imposed a 36-month prison sentence.

The sentence ultimately imposed by the undersigned was based on a Guidelines calculation that was significantly increased by the conclusion that Chu had at least two prior convictions for crimes of violence.  (*See* Part I, *above*.)  And more generally, "when a Guidelines range moves up or down, offenders' sentences move with it." *Peugh v. United States*, 133 S. Ct. 2072, 2084 (2013).  Thus, it is fairly probable that a correctly calculated Guidelines sentencing range would have prompted the undersigned to impose a shorter term of imprisonment.  In light of the conclusion above that *Johnson* prohibits treating the second degree assault conviction as a crime of violence, the Court will vacate the prior sentence and order re-sentencing.[11]

The Court also rejects the Government's argument that Chu's additional conviction for attempted felony menacing makes any error harmless, since this might also have been considered a crime of violence.  (*See* ECF No. 48 at 16–17.)   It is clear from the record that only the two prior convictions for robbery and second degree assault were considered as crimes of violence affecting Chu's Guidelines calculation. This calculation was based on both parties' representations and arguments at sentencing.  (*See* ECF No. 36 at 8, 10, 18.)  In particular, the Government's present argument contradicts the position it took at sentencing, when it argued only that the

---

[11] In another recent case, *United States v. Durete*, No. 14-cr-071 (D. Colo. Sept. 13, 2016) (Amended Order Granting 28 U.S.C. § 2255 Motion, ECF No. 56), the Court concluded that a prior conviction under Colorado's simple robbery statute, Colo. Rev. State. § 18-4-301(1), was not a crime of violence under the elements clause of § 4B1.2(a)(1).  Chu does not raise the issue of whether his robbery conviction can be deemed a crime of violence after *Johnson* and the parties do not identify the particular provision under which he was convicted.  Accordingly, while it is possible this question could affect re-sentencing, it is not addressed here.

robbery and second degree assault convictions were crimes of violence (*see* ECF No. 36 at 10; ECF No. 28 at 2), and agreed that the attempted felony menacing conviction was not a crime of violence (ECF No. 36 at 18).

Since it is clear the Court's Guidelines calculation treated the attempted menacing conviction as *not* being a crime of violence, and did so with the Government's agreement or concession, the Court will not re-open this previously uncontested issue here.  This is particularly so because the parties' briefs do not identify the specific provision(s) under which Chu was convicted and provide only minimal briefing on the potentially complex issue of whether the *attempt* to commit felony menacing in Colorado is sufficient to constitute a crime of violence, particularly after *Johnson*. (*Compare* ECF No. 48 at 16–17 (quoting U.S.S.G. § 4B1.2 cmt. 1 ("'Crime[s] of violence' . . . include . . . attempting to commit such offenses") *with* ECF No. 49 at 13–14 (citing *United States v. Strahl,* 958 F.2d 980, 985–86 (10th Cir. 1992)*, overruled by James v. United States*, 550 U.S. 192, 205 n.4 (2007), *in turn overruled by Johnson*, 135 S.Ct. at 2551).)

### D.    Other Procedural Bars

Finally, the Government's other arguments to the effect that Chu's motion is procedurally barred fall away in light of the Court's analysis above.

### 1.    Plea Agreement Waiver

The Government argues that Chu waived his right to file a § 2255 motion in the terms of his plea bargain.  (ECF No. 48 at 2–4; ECF No. 21 at 2–3.)  However, the terms of this waiver also provide that Chu may still seek relief if "there is an explicitly

retroactive change in the applicable guidelines or sentencing statute." (ECF No. 21 at 2.) The parties disagree whether Chu's motion rests on such an "explicitly retroactive change" in the Guidelines, revealing a disagreement as to the interpretation of the waiver provision.

Chu argues that his claim arises from a change in the Guidelines in the sense that *Johnson* "made a 'change'" through "an alteration in the state or quality" of the Guidelines, specifically by making the residual clause unenforceable. (ECF No. 49 at 2–3.) At a minimum, the Court concludes that the waiver exception for a "change in the applicable guidelines" is ambiguous as applied here, where the Guidelines were not re-written but the applicable law has been explicitly altered by operation of *Johnson* and *Welch*. In other words, *Johnson* and *Welch* explicitly and retroactively changed which terms of the Guidelines are constitutional, and therefore "applicable." The Court must "strictly construe appeal waivers and any ambiguities in these agreements will be read against the Government and in favor of a defendant's appellate rights." *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (internal quotation marks omitted; alterations incorporated). Given the ambiguity arising here, the Court construes the exception in the waiver provision in favor of Chu's appellate rights and concludes that the waiver does not bar his § 2255 motion based on *Johnson*.

2.     Procedural Default

The Government argues that Chu cannot pursue his § 2255 petition because he never presented his current argument in a direct appeal. (ECF No. 48 at 12–14.) The Court finds under the circumstances that the failure to take a direct appeal is no barrier

to Chu's present § 2255 petition.

Before *Johnson*, the argument Chu currently makes would have failed, unless he had taken it all the way to the Supreme Court and convinced the Supreme Court to overrule *Sykes v. United States*, 564 U.S. 1 (2011).  *Sykes* held that the residual clause "states an intelligible principle and provides guidance that allows a person to conform his or her conduct to the law."  *Id.* at 15 (internal quotation marks omitted).  This is what *Johnson* eventually overruled.  *See Johnson*, 135 S. Ct. at 2559.  To preserve his current argument, Chu was not required to argue on direct appeal that Supreme Court precedent should be overruled, particularly precedent as recent as *Sykes*.  *See United States v. Snead*, 2016 WL 4091548, at *2–3 (N.D. Cal. Aug. 2, 2016)*; United States v. Dean*, ___ F. Supp. 3d ___, ___, 2016 WL 1060229, at *5–12 (D. Or. Mar. 15, 2016).

    3.   <u>Timeliness</u>

As addressed above, because the Court concludes that Chu's motion arises from a newly recognized right initially recognized in *Johnson*, his claim was timely brought within one year of that decision; it is not barred because it came more than one year after his conviction became final.  *See* 28 U.S.C. § 2255(f)(1) & (3).

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     Chu's Motion to Vacate Under [2]8 U.S.C. § 2255 (ECF No. 35) is GRANTED;

2.     The Judgment in a Criminal Case dated February 26, 2015 (ECF No. 34) is VACATED;

3.     A re-sentencing hearing is hereby SET for **November 9, 2016 at 11:00 a.m.** in

Courtroom A801;

4.      The Probation Office shall file a second addendum to the PSIR on or before

**October 31, 2016**.  This second addendum shall provide a Guidelines

sentencing range calculation consistent with the holding above that Chu's 2004

Denver District Court conviction for second degree assault is not a "crime of

violence" under U.S.S.G. § 4B1.2(a).  The addendum shall also report any

matter that is currently relevant regarding the new sentence that the Court will

impose, including Chu's behavior in prison since his original sentencing.

Dated this 30th day of September, 2016.

BY THE COURT:

_____
William J. Martinez
United States District Judge